OPINION OF THE COURT
Per Curiam.
Judgment dated October 27, 1983 is reversed, without costs; judgment is awarded in favor of the defendant dismissing plaintiff’s cause of action.
Plaintiff, a member of Local 32B-32J, is a participating employee under the Building Service 32B-J Health Fund, a multiemployer health insurance trust fund organized pursuant to the Labor Management Relations Act (29 USC § 141 et seq.) and regulated by the terms of the Employee Retirement Income Security Act (ERISA) (29 USC § 1001 et seq.). Under the terms of the fund’s health plan, set forth in a booklet published by the *915 fund and distributed to participants, all benefits for “elective” surgery are conditioned upon the claimant first obtaining a “second opinion” from a fund doctor before surgery.
Plaintiff’s application for benefits for his wife’s tonsillectomy was rejected on the ground that the surgery was “elective” (as opposed to emergency) and plaintiff had failed to obtain the required “second opinion”. The tonsillectomy was performed to correct a chronic condition of four years standing. Plaintiff appealed the rejection to the fund’s appeal committee, and that appeal was denied. Plaintiff then commenced this small claims action to recover the benefits at issue (29 USC § 1132 [e] [1]). At the trial of this action is was not disputed that plaintiff indeed failed to secure a “second opinion” until after the surgery and after the rejection of his claim. It was also established at trial that plaintiff had read the fund booklet and was aware of the second opinion requirement.
One John Cassidy, the fund’s claims manager, testified on behalf of the fund and defined elective surgery as “any surgery that is done on a non-emergency basis. If a patient was rushed to the hospital and operated on the Fund would consider that an emergency and not require that the patient have a second opinion.” The policy of requiring a second opinion as a predicate for coverage was instituted by the defendant Union Trustees to curtail unnecessary surgeries. Emily Palfini, a medical registered nurse, is employed by the fund as a medical claims reviewer. In her testimony she described the condition of plaintiff’s wife as chronic since the patient had repeated infections over a period of years, but not a condition requiring emergency surgery within a 24-hour period. Plaintiff placed in evidence letters from both the operating surgeon and the doctor who rendered a second opinion after the surgery, both stating that the operation was “necessary”.
The trial court, in awarding judgment in favor of the plaintiff, observed: “Since it is not controverted that surgery here was necessitated by plaintiff’s wife’s condition, it was not ‘elective’ in the ordinary sense of the word.” Moreover, the trial court found that plaintiff was not fully informed on the conditions required for coverage. Plaintiff, however, admitted that he knew of the requirement of obtaining a second opinion prior to the surgery, and he did not question the fund’s authority to enforce its regulations. Plaintiff’s burden was to show that the fund acted beyond the scope of its authority in rejecting his claim, or in an arbitrary, capricious manner, or in bad faith (Torimino v United Food & Commercial Intl. Union, Indus. Pension Fund, 712 F2d 882, 883). This the plaintiff failed to do.
*916 The court below took issue with the defendant’s medical definition of “elective”, choosing to substitute the ordinary usage definition found in Webster’s Dictionary. In the ordinary usage preferred by the court, “elective” is defined as arising from choice, voluntary. Dorland’s Illustrated Medical Dictionary (25th ed 1974) defines it in part as here pertinent as: “Subject to the choice or decision of the patient or physician; applied to procedures that are advantageous to the patient, but not urgent.” However, there is no proof that the plaintiff misunderstood the meaning in the context of the requirement to obtain a second opinion.
We disagree with the conclusion of the court below that enforcement of the clear terms of the union plan would equate to “a penalty which is against public policy.” Under the ERISA enactment, which is here controlling, the trustees are called upon to adopt minimum standards “assuring the equitable character of such plans and their financial soundness” (29 USC § 1001 [a]). The policy of the trustees in enforcing the “second opinion rule” served to protect the fund’s financial integrity by preventing unnecessary medical bills. It was incumbent upon the plaintiff to comply with reasonable standards implemented by the trustees, and having failed to do so he is precluded from recovery of the benefits here sought.
Hughes, J. P., Sandifer and Parness, JJ., concur.